### LOCKLIN et al. v. BUCK.

(Circuit Court, E. D. New York. May 7, 1906.)

PATENTS—INFRINGEMENT—WOVEN WIRE FABRIC.

The Locklin and Fox patent, No. 655,253, for an improvement in woven wire fabrics, which consists in flattening the ends of the coils to bring the wires into a common plane, and binding the same "by a metallic strip folded longitudinally so as to inclose the flattened ends of the coiled strands of the fabric and then folded again upon itself," discloses patentable invention, and is valid in view of its acknowledged utility, but is limited by its language to the use of a strip which is folded "again upon itself," and is not infringed by a construction in which the upper side of the binder as first applied is narrower than the lower side and the second fold is made upon the fabric.

In Equity. On final hearing.

James H. Raymond, Otto R. Barnett, and Arthur M. Pierce, for complainants.

William Parmenter Martin and Clarence Ladd-Davis, for defendant.

THOMAS, District Judge. The bill is filed to restrain the infringement of letters patent No. 655,253, dated August 7, 1900, on an application filed August 14, 1899, for improvements in woven wire fabrics. The claim is as follows:

"As a new article of manufacture, a woven-wire fabric comprising woven coiled-wire springs having the ends thereof flattened to a common plane and bound by a metallic strip folded longitudinally so as to inclose the flattened

ends of the coiled strands of the fabric and then folded again upon itself, substantially as described."

The specification states:

"The fabric is composed of a series of parallel strands, B, composed of a number of coiled wires spaced a slight distance apart and connected by a pair of single-wire strands interposed therebetween, which single wires are interlaced with each other and with the strands, B, in the course of manufacture of the fabric, the single-wire strands being formed in coils of a diameter substantially equal to that of the plural-wire strands, so that the whole forms a fabric of substantially-uniform thickness."

The specification states the mischiefs that arose before the use of the patented article:

"When the ends of the wires forming the various strands are not properly held before being attached to a frame they not only spring longitudinally out of their relative positions in the fabric, so as to cause the separation and entanglement thereof, but by reason of their spiral winding they all bend and twist laterally in all directions, sometimes causing disintegration of the fabric."

To prevent such results the patentees provided for each side of the fabric a metallic binding strip, and the method of application is described in the specification, as follows:

"When the fabric is formed to the desired length, the ends of the coils are pressed flat upon each other and inserted in the U-shaped metal strip, C, as shown at the right hand side of Fig. 3, so that the ends of all the coils are secured and cannot become displaced. The U-shaped metal strip is then bent transversely upon itself, as illustrated at the left hand side of Fig. 3, and the whole subjected to powerful compression, so that the strip, with the ends of the strands inserted therein, will remain permanently in the form shown at the left in Fig. 3. * * *

"The binding strip in our fabric has a three-fold function to perform—that of fastening or securing the ends of the coils as against unraveling or spreading, that of securing such ends in such a way as to withstand the great pressure to which a woven-wire fabric is subjected in use as a bed-spring, and that of affording a means of firmly and securely fastening the fabric to a bed-frame."

The evidence shows the value of the binding for such purpose, also for the preservation of the integrity of the fabric in handling, storing, and transportation, and the appreciation of its value by extended use, and the acquiescence of the trade in the patent.

It is hardly necessary to make reference to articles in any particular art to illustrate that there was nothing new in preserving the edges of a fabric by covering the same with a metal binding. For instance, in the patent No. 454,027, issued to Brothers in 1891, the specification states:.

"The wire fabric of the bed-bottom is secured between clamping-pieces 11 and 12, and the pieces 11 and 12 are preferably secured together by rivets."

To make use of these clamping pieces it is presumable that the wires were brought to the same plane. The letters do not seem to indicate whether the clamping pieces are of wood or of metal. In letters patent No. 507,844, issued in 1893 to Rich, for a window screen, the wire fabric was secured, as described in the specification, as follows:

"The lower edge of the wire, I, secure in a rigid metallic frame, constructed preferably as shown in, Figs. 3 and 4 and consisting of the cross-bar, L', and the guide strips, M, at the ends of the cross-bar. This I preferably make of

tin or other suitable sheet metal, folding the tin double to form sockets in the top of the cross-bar and the inner side of the guide strips into which the lower edge and the lower end of the side edges of the wire cloth are adapted to be engaged. To secure the cloth in the cross-bar, I, preferably double it upon itself, as shown in Fig. 4, by making the loop or bend, N."

So far as the insertion of the cloth in the metallic frame and the doubling of the frame upon itself are concerned, the process is precisely the same as that employed by the patent in suit, and the complainants have transferred this method of binding and folding from one art to another. However, it must be noticed that it was some six years from the Rich application to the application for the patent in suit, and also that the refractory and troublesome fabric to which the present patent applies is quite another matter from the wire cloth used for screens, and that meantime no one had made any progress toward, or suggestion of, the present binding, until the patentees came forward with their application. It seems a simple matter to flatten down the ends of the spiral wires to a common plane, to clasp them in a metallic border, and fold this border over upon itself. Yet this method of binding was so long in coming, it cured so many annoying and expensive evils in the handling of spiral fabrics, it has been so welcomed by the trade, it has so appealed to the Patent Office, that the court can hardly fail to ascribe to it patentable novelty.

But here it should be observed that the claim is not broadly for a metallic binding, folded either upon itself or upon the fabric, but for such a binding folded "again upon itself," and so it is shown. Now, the defendant does not do this, literally at least. The defendant clasps the edge of the fabric with a metallic binder, but the upper side of the binder is shorter than the lower side. Thereupon the upper side is carried upward and forward, until it is folded upon the fabric itself. In other words, it is not folded upon itself, but upon the fabric. The complainants urge that this falls within the claim, because, as asserted, the defendant obtains the same result. If by this it is meant that he has a practicable binder, the statement is true; but he does not obtain the same result by the same method of folding. In the complainants' fabric when the binding is complete—that is, when two folds have been made—there are two layers of the fabric and four of the strip with which it is bound, while at this state the defendant shows two layers of the fabric and three of the strip. In its final condition, what may be called a hook in the complainants' fabric is caught around a fold in what was at the first folding the upper side of the binder, and held firmly by another fold in what was the lower side of the binder. The defendant's arrangement is dissimilar. When the binder is folded upon the fabric, the axis of its primary fold rests against the outer edge of the upper side of the binder; so that the fold of the fabric in the defendant's case has a thrust and consequent support quite different from that of the complainants. In the complainants' case the original lower side of the fold of the fabric fits into a fold in the lower side of the binder. The same is true of the defendant's binder.

It is concluded that the complainants have so limited their claim that they may not justly charge the defendant with infringement.